

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| Maria Reid and Glenroy Reid, | * | Case No. 18-21383-LSS |
| Debtors. | * | Chapter 7 |
| | * | |

**MEMORANDUM OPINION**

Before the Court[1] is the Motion to Convert Case to Chapter 13[2] (the "Motion to Convert"), filed by Debtors, Maria and Glenroy Reid, the Opposition to the Motion to Convert,[3] filed by the Chapter 7 Trustee, and Debtors' Response to the Trustee's Opposition.[4] The Court held a hearing on the Motion to Convert on February 6th and 13th, 2019. At the hearing, Ms. Reid, Johnnie Davis (Debtors' son-in-law), Denise Kendrick (Debtors' appraiser), Brett Weiss (Debtors' former bankruptcy counsel), the Merrill Cohen, as Chapter 7 Trustee, and Cynthia G. Moses (the Trustee's realtor) testified.

**I.    Background.**

In March 2008, Debtors borrowed $628,450.00 for the purchase of the single-family home that would become their principal residence, which is located at 7201 Glen Pine Street,

---

[1] This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52, made applicable to this contested matter by Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent appropriate, the findings of fact set forth herein shall be deemed conclusions of law and *vice versa*.

[2] Dkt. No. 47.

[3] Dkt. No. 51.

[4] Dkt. No. 54.

Glenn Dale, Maryland 20769 (the "Residence"). In connection therewith, Debtors executed a Purchase Money Deed of Trust against the Residence (the "Mortgage"). Debtors made almost no payments on the Mortgage between 2008 and now. As such, the Mortgage is significantly undersecured. Debtors currently owe between $996,113.92 (as listed in Debtors amended schedules[5]) and $1,002,761.99 (amount listed in the Motion for Relief from Stay[6]). Whereas, the value of the Residence is $600,000.00.[7] Debtors discordant desires to retain the Residence and rid themselves of the Mortgage albatross have been the impetus behind Debtors' frequent direction changes described below.

In 2017, Ms. Reid retained bankruptcy attorney Bennie R. Brooks to file for bankruptcy protection. On July 1, 2017, Ms. Reid, through Mr. Brooks, filed her Chapter 13 voluntary petition (the "2017 Case") in an attempt to reorganize her debts and retain the Residence.[8] CitiMortgage, Inc., the current holder of the Mortgage, filed a proof of claim in the 2017 Case asserting a secured claim of $986,247.48, with arrears totaling $446,955.80.[9] After failing to confirm a Chapter 13 plan, Ms. Reid converted the case to a case under Chapter 11.[10] Ms. Reid never submitted a Chapter 11 plan. On April 17, 2018, Ms. Reid, through counsel, filed a Motion to Dismiss the 2017 Case, wherein she asserted that she desired to resolve her financial

---

[5] Dkt. No. 46.

[6] Dkt. No. 25.

[7] At the hearing, Debtors and the Trustee submitted competing experts on the issue of the value of the Residence. Debtors' expert, Ms. Kendrick, testified that the Residence is worth $644,000.00. The Trustee's expert, Ms. Moses, testified that the Residence was worth $550,000.00. The Court found both experts credible and reliable. In granting due consideration to the somewhat conflicting pictures presented regarding the condition of the Residence and the housing market, the Court reached the value of $600,000.00.

[8] *See In re Maria Rose Reid*, Case No. 17-19047-LSS, Dkt. No. 1.

[9] *See In re Maria Rose Reid*, Case No. 17-19047-LSS, Claim No. 5-1.

[10] *See In re Maria Rose Reid*, Case No. 17-19047-LSS, Dkt. Nos. 36 & 39.

affairs outside of bankruptcy and that she "may surrender her interest in her residence to the secured, mortgage creditor by short sale or deed in lieu."[11]

In 2018, Debtors visited bankruptcy attorney Brett Weiss to discuss the possibility of filing for bankruptcy as a means of retaining the Residence. Debtors expressed to Mr. Weiss their desire to file a Chapter 7 bankruptcy petition.[12] Mr. Weiss informed Debtors that it would be better for them to initially file a Chapter 13 petition, then convert to Chapter 7. Debtors agreed to this course of action.[13]

On August 27, 2018, Debtors, through Mr. Weiss, filed their Chapter 13 Voluntary Petition.[14] Approximately one month later, Debtors filed a Notice of Voluntary Conversion to Chapter 7[15] and, shortly thereafter, the Court entered an Order converting the case.[16] On the same date, Debtors filed their bankruptcy schedules[17] and a statement of intent,[18] wherein they represented that they intended to retain the Residence.

On October 15, 2018, CitiMortgage filed Motion for Relief from Automatic Stay[19] seeking relief from the automatic stay to allow it to foreclose on the Residence. On October 29, 2018, Debtors filed a response to that motion,[20] representing that they did not object to the relief

---

[11] *See In re Maria Rose Reid*, Case No. 17-19047-LSS, Dkt. No. 58.

[12] *See* Trustee's Exhibit 1.

[13] *See* Trustee's Exhibit 2.

[14] Dkt. No. 1.

[15] Dkt. No. 18.

[16] Dkt. No. 20.

[17] Dkt. No. 13.

[18] Dkt. No. 14.

[19] Dkt. No. 25.

[20] Dkt. No. 28

requested. On October 30, 2018, the Chapter 7 Trustee held the meeting of creditors, at which Debtors appeared and testified. At the meeting of creditors, the Trustee explained to Debtors that he intended to sell all of Debtors' real property, including the Residence. On November 5, 2018, the Trustee filed an objection to CitiMortgage's motion for stay relief.[21] On November 15, 2018, the Court entered a Consent Order Terminating the Automatic Stay on May 19, 2019.[22] Pursuant to that Order, the automatic stay will terminate as to the Residence on May 19, 2019, or upon conversion of this case to a case under another chapter, if earlier.

In their amended schedules, Debtors scheduled that they owned a single-family home located at 814 Elfin Avenue, Capitol Heights, Maryland 20743 (the "Elfin Avenue Property"), valued at $140,690.00, and that Mr. Reid owned a single-family home located at 6802 James Farmer Way, Capitol Heights, Maryland 20743 (the "James Farmer Way Property"), valued at $60,000.00.[23] Both the Elfin Avenue Property and the James Farmer Way Property are scheduled as unencumbered.[24]

The Mortgage comprises the bulk of Debtors' scheduled secured debts, which collectively total $1,011,504.92.[25] Debtors scheduled $3,617.83 in unsecured debts.[26] In their initial Schedules I and J, Debtors represented that their combined monthly income was $8,535.79 and their monthly expenses were $9,239.93, showing a monthly deficit of $1,255.51.[27] In their

---

[21] Dkt. No. 29.

[22] Dkt. No. 32.

[23] Dkt. No. 46, p. 2.

[24] Dkt. No. 46, pp. 13-14.

[25] Dkt. No. 46, p. 14.

[26] Dkt. No. 46, pp. 16-17

[27] Dkt. No. 13, pp. 29-32

Amended Schedules I and J, Debtors list a combined monthly income of $9,081.52 and monthly expenses of $6,912.37, showing a monthly surplus of $2,169.15.[28] The Amended Schedule I shows that Ms. Reid's monthly income decreased by more than $1,000.00, but that Debtors receive $2,000.00 a month from their daughter and son-in-law, $1,000.00 a month from their son, and that Mr. Reid now receives $1,005.00 monthly in social security income.

## II.    Discussion.

### A.    *Standard for a Second Voluntary Conversion.*

A debtor who filed Chapter 7 voluntary petition may convert their case to a case under chapters 11, 12, or 13 as a matter of right, once.[29] Debtors who have converted their case to a case under Chapter 7 are explicitly excluded from conversion as a matter of right under § 706(a). Whether a court may allow a second conversion is the matter of some controversy.[30] However, most courts in this circuit that have addressed the issue, have held in the affirmative.[31]

In *In re Muth*, the Bankruptcy Court for the District of Colorado held that a second voluntary conversion was not permissible under § 706.[32] In reaching that conclusion, the court looked to the legislative history. Specially, the court quoted a House Report, which states that "Section 706(a) 'gives the debtor one absolute right of conversion of a liquidation case to a

---

[28] Dkt. No. 46, pp. 18-23

[29] 11 U.S.C. § 706(a).

[30] *Compare In re Muth*, 378 B.R. 302 (Bankr. D. Colo. 2007) (holding that the court lacked authority to allow a second voluntary conversion) *with In re Povah*, 455 B.R. 328 (Bankr. D. Mass. 2011) (holding that the court has discretion to allow second conversion).

[31] *See e.g.*, *In re Anderson*, 354 B.R. 766, 769 (Bankr. D.S.C. 2006); *In re Sensibaugh*, 9 B.R. 45, 46 (Bankr. E.D. Va. 1981). *See also Pookrum v. Bank of Am., N.A.*, 512 B.R. 781, 787 (D. Md. 2014) (holding that a debtor may seek to convert a case that was previously converted to Chapter 7 to Chapter 11 under 11 U.S.C. § 706(b)).

[32] *Muth,* 378 B.R. at 303.

5

reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right.'"[33]

Conversely, in *In re Povah*, the Bankruptcy Court for the District of Massachusetts held that it had discretion to allow a second voluntary conversion under § 706(c). That court noted that § 706(a) explicitly addresses only the debtor's ability to convert a case but says nothing of the court's authority to permit a conversion.[34] Conversely, § 706(c), which prohibits conversion to Chapters 12 or 13 unless requested or consented to by the debtor, explicitly limits the court's authority to authorize conversion. *Id*. Finally, § 706(d), which provides that the case may not be converted to a chapter under which the debtor is ineligible to be a debtor, limits both debtor and the court. *Id.*

This Court agrees with the reasoning of the *Povah* court and holds that it has the discretion to allow a second voluntary conversion under § 706(c). To inform its use of discretion, the Court must closely "scrutinize the debtor's circumstances, *bona fides*, and ability to succeed with the purposes for conversion."[35] The burden is on Debtors to establish: (1) eligibility to be Chapter 13 debtors; (2) feasibility of reorganization; and (3) good faith.[36] Finally, the Court must "weigh the interests of the debtor, the estate and all creditors" in determining whether it should allow conversion.[37]

    B.    *Chapter 13 Eligibility.*

---

[33] *Id.* (*quoting* H.R. Rep. No. 95–595, at 380 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95–989, at 94 (1978), reprinted in 1978 U.S.C.A.A.N. 5787, 5880.).

[34] *Povah,* 455 B.R. at 340 (*citing In re Bange*, 08-40156-7C, 2010 WL 3829632, at *1 (Bankr. D. Kan. Sept. 23, 2010)).

[35] *Anderson*, 354 B.R. at 769.

[36] *See Povah*, 455 B.R. at 341.

[37] *Anderson*, 354 B.R. at 769.

To be eligibile to be a Chapter 13 debtor, the debtor must be (1) an individual with (2) regular income, (3) unsecured debts of less than $394,7251, and (4) secured debts of less than $1,184,2001.[38] Debts that are contingent or unliquidated are not included in the Chapter 13 debt limits calculation.[39] In calculating the amount of a debtor's unsecured debts, the court must include "the amount by which secured creditors are undersecured."[40]

Here, there is no dispute that Debtors are individuals with regular income. At issue, are the debt limits or, more specifically, the unsecured debt limit. While Debtors and CitiMortgage differ regarding the amount owed under the Mortgage, under neither calculation would Debtors be over the secured debt limit. However, it is clear that the Mortgage is substantially undersecured. After weighing the testimony of the experts presented by Debtors and the Trustee, the Court finds that the value of the Residence is approximately $600,000.00. Using Debtors' scheduled amount of the Mortgage of $996,113.92, the unsecured portion of the Mortgage is $396,113.92, enough in itself to push Debtors over the unsecured debt limits. Accordingly, Debtors are ineligible to be Chapter 13 debtors.

      *C.*      ***Feasibility of Reorganization.***

Debtors' stated motive for seeking conversion to Chapter 13 is to retain the Residence. To achieve that goal, Debtors will need to cure the pre-petition arrears on the Mortgage of $446,955.80.[41] The total funding of Debtors' proposed plan is $442,400.00. The proposed plan is nominally underfunded. More importantly, the proposed plan would require that Debtors make payments of $10,500.00 a month for the last 36 months of the plan. It would be almost

---

[38] 11 U.S.C. § 109(e).

[39] *Id.*

[40] *In re Balbus*, 933 F.2d 246, 247 (4th Cir. 1991).

[41] 11 U.S.C. § 1322(b)(5).

7

impossible for Debtors to maintain that level of plan payments for that length of time. After including significant contributions by Debtors' adult children in their Amended Schedules I and J, Debtors calculate that they have a current monthly surplus of only $2,169.00.[42] Even if Debtors sold the Elfin Avenue Property and James Farmer Way Property and Mr. Reid obtained employment, their ability to cure the Mortgage arrears is highly improbable. Further, Ms. Reid's testimony on this topic unreliable. For approximately a decade, Debtors have been unable to consistently make the approximately $5,000.00 monthly payment on the Mortgage. It is beyond reason that Debtors will be able to make not only their monthly mortgage payment, but also a monthly plan payment of more that twice that amount. Accordingly, reorganization in Chapter 13 is not a feasible option for Debtors.

### D.　*Good Faith.*

Lastly, Debtors must seek conversion in good faith. In the last few years, Debtors have exhausted every avenue available to them in their attempt to retain the Residence. These efforts included attempting to obtain relief through Chapters 7, 11, and 13. Even in her testimony, Ms. Reid proposed new options that were not listed in Debtors' proposed plan, which was filed approximately one month earlier. These options included selling the Elfin Avenue Property and James Farmer Way Property and renovation and rental of the Residence's basement.

Debtors are exhausted. So much so, that it appears Ms. Reid was unaware of what avenue they were currently pursuing to achieve her goal. While in the Motion to Convert, Debtors assert that Mr. Reid is attempting to find employment, Ms. Reid testified that Mr. Reid is retired. While Mr. Davis testified that he had been living at the residence since 2015, Debtors neglected to disclose this income until they filed the Motion to Convert. The inconsistencies and

---

[42] Dkt. No. 46.

lack of candor do not necessarily reflect malevolent intent on Debtors' behalf. Instead, they reveal that Debtors are unable or unwilling to face reality and grasp the magnitude of their financial situation. Debtors attempt to convert this case to a case under Chapter 13 is not motivated by a serious and good faith willingness to reorganize. Debtors merely seek to delay the inevitable at the expense of their creditors.

As a final note, pursuant to the Consent Order Terminating the Automatic Stay,[43] CitiMortgage has obtained relief from the automatic stay, with Debtors' consent, which will become effective immediately upon conversion of this case. Accordingly, conversion to Chapter 13 is highly unlikely to assist Debtors in attempting to retain the Residence. While the Court is sincerely sympathetic to Debtors' present desire to retain the Residence, their quixotic journey is likely at an end irrespective of this Court's ruling today.

### III.  Conclusion.

For the reasons stated above, the Court concludes that it should deny the Motion to Convert. The Court will enter an order commensurate with this memorandum opinion.

cc:    Chapter 7 Trustee
       Debtors
       Debtors' Counsel
       U.S. Trustee

**End of Order**

---

[43] Dkt. No. 32.